UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN L. SCHEIDEL,

                              Plaintiff,

                                                                 5:09-CV-0114
v.                                                                        (GTS/GHL)

FEDERAL DEPOSIT INSURANCE CORP.,

                              Defendant.
_____

APPEARANCES:

STEPHEN L. SCHEIDEL
  Plaintiff, *Pro Se*
216 Essex Street
Syracuse, New York 13204

FEDERAL DEPOSIT INSURANCE CORP.           DINA L. BIBLIN, ESQ.
  Counsel for Defendant
3501 Fairfax Drive
D-7050
Arlington, Virginia 22226

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court in this *pro se* civil rights action filed by Stephen L. Scheidel ("Plaintiff") against the Federal Deposit Insurance Corporation ("FDIC" or "Defendant") are the following: (1) Plaintiff's motion for summary judgment (Dkt. No. 9); (2) Defendant's motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction and/or failure to state a claim upon which relief can be granted (Dkt. No. 22); and (3) Plaintiff's letter-motion requesting leave to amend his Amended Complaint to add as Defendants the United States of America and Michelle Kosse, Robert J. Fagan, Michelle Borzillo, Richard B. Frye, Chris J.

Conanan, Tommie Barnes, James R. Lawrence, Henry R.F. Griffin, Erica F. Bovenzi, Robert Feldman, Barbara Pfaffenberger, and Joyce Yamaski (Dkt. No. 48).  For the reasons that follow, Defendant's motion is granted, Plaintiff's motions are denied, and Plaintiff's Amended Complaint is dismissed in its entirety.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Amended Complaint

A month after he filed a motion for summary judgment in this action, Plaintiff filed an Amended Complaint in this action.  (Dkt. No. 18.)  Construed with the utmost of liberality, Plaintiff's Amended Complaint alleges that the FDIC wrongfully withdrew its offer of employment to him as a bank examiner in 2008 after a criminal background check revealed that he had been convicted of the felony of embezzlement from an employee pension fund, pursuant to 18 U.S.C. § 664, in 1992. (*See generally* Dkt. No. 18 [Plf.'s Am. Compl.].)  Based on these factual allegations, Plaintiff asserts the following four claims: (1) violation of the *Ex Post Facto* Clause set forth in Article 1, Section 9 of the United States Constitution; (2) the "wrongful application of 12 U.S.C. [§] 1822(f)(4) under 5 U.S.C. [§] 706"; (3) the "application of an unlawful regulation[], 12 C.F.R. 336 sub part B, subsections 336.4(a)(1) and 336.9 in violation of 12 U.S.C. [§] 1822(f)(4), 5 U.S.C. [§] 7301, 5 U.S.C. [§] 2635.105 and 5 U.S.C. [§] 731.202, 5 U.S.C. [§] 731.310 as established in FDIC Circular 2120.1"; (4) the "violation of Plaintiff's right to due process under federal, the 5th and state, the 14th amendments to the United States Constitution."  (Dkt. No. 18.)

For a more detailed recitation of these claims, and the factual allegations giving rise to them, the Court refers the reader to the Amended Complaint in its entirety.  (*Id.*)

**B.     Defendant's Motion**

Generally, in support of its motion, Defendant argues that Plaintiff's Amended Complaint should be dismissed for lack of subject-matter jurisdiction for the following reasons: (1) pursuant to the Administrative Procedure Act ("APA"), the Court lacks jurisdiction to award Plaintiff money damages; and (2) Plaintiffs' claims are barred by the liability exceptions to the Federal Tort Claims Act ("FTCA"). (Dkt. No. 24.) With regard to this second reason for dismissal, Defendant argues, more specifically, as follows: (1) Plaintiff's tort claim of "interference with contract rights" is specifically barred by the FTCA; (2) Plaintiff's claim for monetary damages arising out of the alleged "unlawful interpretation" of Defendant's regulation is not actionable because FTCA actions may not be based on governmental policy decisions; and (3) a *Bivens* action for a constitutional tort may not be brought against the United States or the FDIC. (*Id.*)

In the alternative, Defendant argues that certain of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted for the following reasons: (1) money relief is not available under the *Ex Post Facto* Clause, and, in any event, with regard to his conviction, Plaintiff has failed to allege facts plausibly suggesting the applicability of the *Ex Post Facto* Clause; and (2) Plaintiff's Fourteenth Amendment due process claim should be dismissed because the FDIC is not a state actor. (*Id.*)

Generally, in his response to Defendant's motion, Plaintiff argues as follows: (1) he has alleged facts plausibly suggesting that "Defendant's creation and publication of 12 C.F.R. 336 sub part B, and inclusion as Defendant[']s parts of Defendant[']s 'suitability criteria' in FDIC Circular 2120.2 violates [his] Fifth Amendment rights to procedural due process"; (2) he has alleged facts plausibly suggesting that the laws that Defendant relied on to deny Plaintiff

employment violate his substantive due process rights, as well as his rights under the *Ex Post Facto* Clause; (3) he has standing under Article III of the United States Constitution to bring his claims because he may "seek 'redress and remedy' for injuries and damages [he] suffered by the wrongful enactment, interpretation and application of a regulation, specifically 12 C.F.R. 336 sub part B"; (4) he has alleged facts plausibly suggesting that he is entitled to money damages based on Defendant's violation of federal laws; (5) because he would suffer "personal humiliation" if he were forced to accept employment with Defendant as redress, "the only equitable relief available to [him] is monetary damages"; (6) he has alleged facts plausibly suggesting that Defendant's actions violated his rights under New York State law, including Article 23-a of the New York State Correction Law; and (7) pursuant to the "sue and be sued" language set forth in 12 U.S.C. § 1819, Defendant has waived its right to any sovereign immunity defense. (Dkt. No. 30.)

In its reply, in addition to reiterating previously advanced arguments, Defendant argues as follows: (1) Plaintiff's discrimination claim was previously "dropped" from this case and therefore should not be considered by the Court; (2) Plaintiff incorrectly understands *FDIC v. Meyer*, 510 U.S. 471 (1994), to permit him to sue Defendant for money damages arising out of Defendant's alleged wrongful interpretation and execution of a regulation; (3) Plaintiff's claim for money damages arising out of any constitutional tort (such as violation of his Fifth Amendment rights) is a *Bivens* claim, which may not be brought against Defendant; (4) the case law that Plaintiff cites in support of his argument about legal retroactivity and application of the *Ex Post Facto* Clause is inapposite; and (5) the FDIC's rescission of an offer of employment that was specifically conditioned upon passing a felony background check does not constitute deprivation of a "property right" under the Constitution. (Dkt. No. 31.)

4

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

On a motion brought pursuant to Fed. R. Civ. P 12(b)(1), "the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists." *Dong v. Ridge*, 02-CV-7178, 2005 WL 1994090, at *3 (S.D.N.Y. Aug. 18, 2005) (quoting *Chayoon v. Chao*, 355 F.3d 141, 143 [2d Cir. 2004]). Therefore, when a plaintiff brings a lawsuit against the United States, he or she must therefore prove, by a preponderance of the evidence, that the United States has consented to being sued. *See Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2003) (noting that, "under the principle of sovereign immunity . . . the United States may not be sued without its consent[,] . . . [and it] is [therefore] a prerequisite for jurisdiction"); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations omitted); *see also Lehman v. Nakshian*, 453 U.S. 156, 160-61, 101 S.Ct. 2698, 2701-02 (1981); *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (noting that "a finding of sovereign immunity . . . deprive[s][a] court of subject matter jurisdiction"). "In other words, the United States must unequivocally express its consent to be sued by specifically waiving sovereign immunity in a statutory text." *Williams v. United States*, 07-CV-3018, 2010 WL 963474, at *8 (S.D.N.Y. Feb. 25, 2010) (citing, *inter alia*, *Lane v. Peña*, 518 U.S. 187, 192 [1996]). Further, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman*, 453 U.S. at 161; *see also Lane*, 518 U.S. at 192 (noting that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign").

"The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 723 (2d Cir. 1983) (internal quotation marks and citations omitted) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 [1963]; *Land v. Dollar*, 330 U.S. 731, 738 [1947]; and *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 [1949]). Therefore, "a suit against a federal agency or its officers, acting in their official capacities, constitutes a lawsuit against the federal government." *Williams*, 2010 WL 963474, at *8 (citing *Dotson*, 398 F.3d at 177 [noting that federal agencies and officers acting in official capacities are protected by sovereign immunity]); *see also Meyer*, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit").

**B.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the

merits." *Id*. at 212, n.18 [citations omitted].[1]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the

---

[1] *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. [citations omitted].[2]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[3] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set

---

[2]  *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[3]  *See, e.g., Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[4]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.

### III.   ANALYSIS OF DEFENDANT'S MOTION TO DISMISS

####   A.   Plaintiff's *Ex Post Facto* Claim

As stated above in Part I.B. of this Decision and Order, Defendant seeks dismissal of this claim because (1) a *Bivens* action for a constitutional tort may not be brought against the United States or the FDIC, (2) money relief is not available under the *Ex Post Facto* Clause, and (3) with regard to his conviction, Plaintiff has failed to allege facts plausibly suggesting the applicability of the *Ex Post Facto* clause.  Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court accepts Defendant's arguments.

With regard to Defendant's first argument, a "*Bivens* action" is an action for damages, brought by an individual, against a federal agent, based on the federal agent's alleged violation

---

[4]   For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

of the individual's constitutional right(s) pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See FDIC v. Meyer*, 510 U.S. 471, 484 (1994). In *Meyer*, the Supreme Court expressly held that *Bivens* actions may not be brought against federal agencies. *Meyer*, 510 U.S. at 484-86. As a result, Plaintiff's claim for money damages arising out of Defendant's alleged violation of the *Ex Post Facto* Clause is not actionable.

In addition, with regard to Defendant's second and third arguments, "[t]he Constitution prohibits the enactment of *ex post facto* laws." *Plaza Health Lab., Inc. v. Perales*, 702 F. Supp. 86, 89 (S.D.N.Y. 1989) (citing U.S. Const. art. 1, §§ 9, cl. 3 and 10). "The prohibition applies only to criminal, and not civil cases." *Perales*, 702 F. Supp. at 89 (citing *DeMartino v. Comm. of Internal Revenue*, 862 F.2d 400, 409, [2d Cir. 1988]; *United States v. DKG Appaloosas, Inc.*, 829 F.2d 532, 540 [5th Cir. 1987], *cert. denied sub nom*. *One 1984 Lincoln Mark VII Two Door v. United States*, 485 U.S. 976 [1988]).

While "[i]t is true . . . that the *ex post facto* effect of a law cannot be evaded by simply giving civil form to that which is essentially criminal[,]" as in *Perales*, "[t]he present case does not fall into that category of cases where essentially criminal laws violate the *ex post facto* clause, despite their denomination as 'civil' actions." *Id*. (internal quotation marks and citations omitted). The "sanction" imposed by the FDIC here is clearly not intended as punishment, nor does it in any way constitute a quasi-criminal proceeding or civil supplement to a criminal action. Simply put, refusal to hire an individual based on his or her criminal history is a valid regulatory function of the Department. In addition, the fact that the authority for this regulation was not enacted until after Plaintiff's felony conviction does not render the regulatory action "criminal" for *ex post facto* purposes.

For each of these alternative reasons, Plaintiff's claims arising under the *Ex Post Facto* Clause are dismissed.

### B.     Plaintiff's Due Process Claims

#### 1.     Plaintiff's Due Process Claim Under the Fourteenth Amendment

As stated above in Part I.B. of this Decision and Order, Defendant seeks dismissal of this claim because it is not a state actor. Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court accepts Defendant's argument.

"[T]he Fourteenth Amendment, by definition, applies only to state actors, not federal." *Williams v. United States*, 08-CV-2350, 2009 WL 3459873, at *15 (S.D. Tex. Oct. 20, 2009) (citing U.S. Const. amend XIV, § 1 ["nor shall any *State* deprive any person of life, liberty, or property, without due process of law . . . ."] [emphasis added]); *see also Rutherford v. United States*, 702 F.2d 580, 583 n.4 (5th Cir. 1983) (noting that "[t]he [F]ourteenth [A]mendment's restrictions on the powers of the states do not apply to the federal government). Since the FDIC is an agency of the United States,[5] it is not a state actor, and is therefore entitled to judgment as a matter of law on Plaintiff's claim alleging a constitutional violation premised on the Fourteenth Amendment.

#### 2.     Plaintiff's Due Process Claim Under the Fifth Amendment

As stated above in Part I.B. of this Decision and Order, Defendant seeks dismissal of this claim for lack of subject-matter jurisdiction because a *Bivens* action for a constitutional tort may not be brought against the United States or the FDIC. Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court accepts Defendant's argument for the reasons discussed in Part III.A. of this Decision and Order. The Court would only add two points. First, contrary to Plaintiff's argument, raised in his amended response, Defendant's rescission of his offer of employment, which was specifically conditioned upon passing a felony

---

[5]     *FDIC v. Bakkebo*, 506 F.3d 286, 291 n.5 (4th Cir. 2007); *FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir. 1971).

background check, does not constitute deprivation of a "property right" under the Constitution. *Jones v. City of Cortland Police Dept.*, 448 F.3d 369, 372 (6th Cir. 2006) (noting that an employment offer conditioned on a satisfactory background check "created no property or liberty interest for the purpose of [a] due process argument"); *Croddy v. FBI*, 00-CV-0651, 2006 WL 2844261, at *3 (D.D.C. Sept. 29, 2006) (noting that, in alleging violation of due process based on damage to reputation, "a discharge or demotion is required to ensure that the damage to the employee's reputation is sufficiently severe," and a revocation of "conditional offers of employment . . . constitute[s] neither a discharge nor demotion from an employment position").

Second, the Court declines to consider Plaintiff's argument, raised for the first time in his Amended Response to Defendant's motion, that Defendant deprived Plaintiff of his "rights under New York State laws in violation of the Fifth Amendment" by deeming his certificate of relief of disabilities invalid. In any event, even if the Court were to deem Plaintiff's Amended Response as effectively amending and/or supplementing his Amended Complaint, the Court would nonetheless reject this argument. Article 23-a of the New York State Correction Law provides, in pertinent part, as follows:

> No application for any license or employment, to which the provisions of this article are applicable, shall be denied by reason of the applicant's having been previously convicted of one or more criminal offenses . . . when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, *unless*:
> (1) *there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought*; or
> (2) *the issuance of the license or the granting of the employment would involve an unreasonable risk . . . to the safety or welfare of specific individuals or the general public.*

N.Y. Correction Law, Art. 23-a, §§ 752(1), (2) (McKinney 2003) (emphases added).

Here, Plaintiff applied for a position as a bank examiner, and his previous felony conviction was for embezzling money from an employee pension fund. Even construing

12

Plaintiff's factual allegations with the utmost of special solicitude, the Court finds that he has alleged facts plausibly suggesting a direct relationship between his previous criminal offense and the employment he sought.

### C. Plaintiff's Tort Claim of Interference with Prospective Economic Advantage and/or Future Employment

As stated above in note 1 of this Decision and Order, Defendant seeks dismissal of this claim because it is specifically barred by the FTCA. Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court accepts Defendant's argument.

In his Amended Complaint, Plaintiff alleges that, by rescinding its employment offer to him, Defendant compromised his ability to earn a living in his chosen profession, and thus damaged his reputation. Plaintiff further alleges that rescission of the employment offer has prevented him from applying for jobs as a bank examiner elsewhere in the federal government.

As an initial matter, these allegations do not plausibly suggest a claim for either deprivation of future employment or interference with prospective economic advantage. This is because Plaintiff has failed to allege facts plausibly suggesting that Defendant's decision to rescind Plaintiff's employment offer was malicious, fraudulent or deceitful. *Lettis v. US Postal Serv.*, 39 F. Supp.2d 181, 208 (E.D.N.Y. 1998) (noting that, to succeed on a cause of action for either deprivation of future employment or interference with prospective economic advantage, a plaintiff must allege, among other things, that he "would have received a contract but for the malicious, fraudulent and deceitful acts of a third party").

Moreover, even if Plaintiff had alleged facts plausibly suggesting a claim for deprivation of future employment or interference with prospective economic advantage, the claim would nonetheless be dismissed because it is specifically barred by the FTCA. *See* 12 U.S.C. §

13

2680(h); *Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) (noting that "Section 2680(h), commonly known as the intentional tort exception, bars all claims 'arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights'") (quoting 12 U.S.C. § 2680[h]).

For each of these alternative reasons, the Court dismisses Plaintiff's tort claim for deprivation of future employment or interference with prospective economic advantage.

### D. Plaintiff's Claim for Monetary Damages Arising out of Defendant's Alleged "Unlawful Interpretation" of Its Regulation

As stated in Part I.B. of this Decision and Order, Defendant seeks dismissal of this claim because (1) pursuant to the APA, the Court lacks jurisdiction to award Plaintiff money damages, and (2) to the extent that Plaintiff seeks something other than money damages, FTCA actions may not be based on governmental policy decisions. Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court accepts Defendant's arguments.

In his Amended Complaint, Plaintiff alleges that he is entitled to monetary damages as a result of, among other things, Defendant's alleged "unlawful interpretation" of its own regulation, specifically 12 C.F.R. 336 sub part B. Plaintiff further alleges that Defendant "wrongful[ly] appli[ed] 12 U.S.C. [§] 1822(f)(4)[, the statute on which 12 C.F.R. 336 is based,] under 5 U.S.C. [§] 706."

"Under the Administrate Procedure Act, [5 U.S.C. §§ 702, 704 and 706(2)(A),] a district court may review 'final agency action for which there is no other adequate remedy in a court.'" *Natural Res. Def. Council, Inc. v. US Consumer Prod. Safety Comm'n*, 597 F. Supp.2d 370, 378 (S.D.N.Y. 2009) (quoting 5 U.S.C. § 704). "The Court must 'hold unlawful and set aside' agency action that is ". . . not in accordance with law.'" *Natural Res. Def. Council, Inc.*, 597 F.

Supp.2d at 378 (quoting 5 U.S.C. § 706[2][A]). However, pursuant to Section 702, judicial review of an action seeking money damages is not appropriate. *See* 5 U.S.C. § 704 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.") (emphasis added).

By its very terms, Section 702 of the APA does not confer jurisdiction to this Court to grant the relief requested by Plaintiff. Moreover, to the extent that Plaintiff seeks relief that is not monetary, the APA does not "confer authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 704. Here, Section 1346(b) of the FTCA is the exclusive remedy for Plaintiff's "unlawful interpretation" claim (which he asserts as a claim separate and apart from his constitutional tort claims), because this claim is "cognizable" under Section 1346(b).[6] As a result, to the extent that Plaintiff

---

[6] "Cognizable ordinarily means '[c]apable of being tried or examined before a designated tribunal; within [the] jurisdiction of [a] court or power given to [a] court to adjudicate [a] controversy.'" *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) (quoting *Black's Law Dictionary* 259 [6th ed. 1990]). "Under this definition, the inquiry focuses on the jurisdictional grant provided by § 1346(b)." *Meyer*, 510 U.S. at 476. "Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable." *Id.* (citation omitted). "This category includes claims that are:

> '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the

15

requests relief that is not monetary, the APA does not confer authority to grant such relief.

Moreover, because Plaintiff's "unlawful interpretation" claim is cognizable under Section 1346(b), Defendant "cannot be sued in its own name." *Meyer*, 510 U.S. at 476 (noting that, "if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name'"). As a result, to the extent that Plaintiff seeks relief that is not monetary, such relief must also be denied.

For each of these alternative reasons, Plaintiff's "unlawful interpretation" claim is dismissed.

### E.  Plaintiff's Claim for Monetary Damages Arising out of Defendant's Application of an Alleged "Unlawful Regulation"

Plaintiff argues that 12 C.F.R. § 336.4 is an "unlawful" regulation because (1) the statute on which it is based, 12 U.S.C. § 1822(f), applies only to contractors, and (2) 12 C.F.R. § 336.4 was not first approved by the Office of Government Ethics. Based on even the most liberal construction of Plaintiff's Amended Complaint, the Court rejects Plaintiff's first argument due to the plain language of 12 U.S.C. § 1822(f)(1)(B).

More specifically, 12 U.S.C. § 1822(f)(1)(B) makes clear that a contractor is "an[] individual who, pursuant to a contract or any other arrangement, performs functions or activities of the Corporation, under the direct supervision of an officer or employee of the Corporation,

---

law of the place where the act or omission occurred.'

*Id*. at 476-77 (quoting 28 U.S.C. § 1346[b]). Therefore, "[a] claim comes within this jurisdictional grant–and thus is 'cognizable' under § 1346(b)–if it is actionable under § 1346(b)." *Id*. at 477. "And a claim is actionable under § 1346(b) if it alleges the six elements outlined above." *Id*. (citation omitted). Applying these principles to this case, the Court concludes that Plaintiff's tort claim is "cognizable" under Section 1346(b) because Plaintiff has alleged that (1) an agency of the United States, (2) injured him, (3) as a result of one or more agent's wrongfully interpreting one of its regulations, (4) while acting within the scope of employment, and (5) if a private person, Defendant would be liable under state law for this wrongful interpretation, (6) which entitles him to monetary relief.

16

[and] shall be deemed to be an employee of the Corporation for purposes of Title 18 and this chapter." 12 U.S.C. § 1822(f)(1)(B). Moreover, 12 U.S.C. § 1822(f)(4), entitled "Disapproval of contractors," provides, among other things, the following: (1) the Board of Directors with the authority to "prescribe regulations establishing procedures for ensuring that any individual who is performing, directly or indirectly, any function or service on behalf of the Corporation meets minimum standards of competence, experience, integrity, and fitness"; (2) clarification that such regulations "shall provide that the Corporation shall prohibit any person who does not meet the minimum standards of competence, experience, integrity, and fitness from . . . entering into any contract with the Corporation . . . or . . . becoming employed by the Corporation or otherwise performing any service for or on behalf of the Corporation"; and (3) clarification that such regulations "shall require the Corporation to prohibit any person who has . . . been convicted of any felony." Based on this unambiguous language, 12 U.S.C. § 1822(f) applies to Plaintiff.

Furthermore, the Court concludes that Plaintiff's second argument (i.e., that 12 C.F.R. § 336.4 is unlawful because it was not first approved by the Office of Government Ethics), is without merit. The authority for 12 C.F.R. § 336 is 12 U.S.C. § 1822(f). Contained within 12 U.S.C. § 1822(f) are six sub-sections. One of these sub-sections, Section 1822(f)(2), requires the Board of Directors to obtain the concurrence of the Office of Government Ethics before prescribing regulations concerning employee conduct, financial disclosure, and post-employment activities, which are above and beyond the ethics and conflict of interest rules and regulations issued by the Office of Government Ethics. However, this sub-section applies only to individuals deemed to be employees of the FDIC. Conversely, Section 1822(f)(4), which applies to individuals seeking employment with the FDIC, does not require the Board of Directors to obtain the approval of the Office of Government Ethics before prescribing regulations concerning employment with the FDIC.

Section 336.4 of Title 12 of the Code of Federal Regulations regards the appointment to a position with the FDIC (and prohibits the FDIC from employing a person who has been convicted of a felony).  Therefore, this regulation derives its authority from Section 1822(f)(4), and not Section 1822(f)(2).  As a result, approval of the Office of Government Ethics was not required prior to the enactment of this regulation.

For these reasons, Plaintiff's claim for monetary damages arising out of Defendant's application of an alleged "unlawful regulation" is dismissed.

### F.      Plaintiff's Discrimination Claim

The Court agrees with Defendant that Plaintiff previously withdrew his discrimination claim voluntarily.  (*See* Dkt. No. 19, Attach. 1, at 2 [letter from Plaintiff to Defendant, indicating that he was withdrawing his EEO complaint]; Dkt. No. 24, at 14 [Defendant's response letter confirming withdrawal].)  As a result, the Court declines to consider the merits of this claim.

## IV.     ANALYSIS OF PLAINTIFF'S MOTION TO AMEND HIS AMENDED COMPLAINT

Motions to amend a complaint are governed by Fed. R. Civ. P. 15, which states that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Nevertheless, the granting of leave to amend a complaint is not automatic; and a court may deny a motion to amend on the ground of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of [the proposed] amendment . . . . ."  *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979).

18

Here, setting aside the fact that Plaintiff has failed to comply with Local Rule 7.1(a)(4) of the Local Rules of Practice for this Court (which requires, among other things, that a party moving to amend a pleading attach an unsigned copy of the proposed amended pleading to its motion papers), the Court concludes that it would be futile to allow Plaintiff to amend his Amended Complaint for the reasons stated in the related actions of *Scheidel v. Kosse,* 09-CV-1277 and *Scheidel v. United States of America*, 09-CV-1223.  As a result, the Court denies Plaintiff's letter-motion requesting leave to amend his Amended Complaint.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss for lack of subject-matter jurisdiction and/or failure to state a claim upon which relief can be granted (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 9) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's letter-motion requesting leave to amend his Amended Complaint to add as Defendants the United States of America and Michelle Kosse, Robert J. Fagan, Michelle Borzillo, Richard B. Frye, Chris J. Conanan, Tommie Barnes, James R. Lawrence, Henry R.F. Griffin, Erica F. Bovenzi, Robert Feldman, Barbara Pfaffenberger, and Joyce Yamaski (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 18) is **DISMISSED**.  The clerk is directed to enter judgment in favor of the defendants and close this case.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from this Decision and Order would not be taken in good faith.

Dated: September 28, 2010
       Syracuse, New York

                                              Hon. Glenn T. Suddaby
                                              U.S. District Judge